UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTINA ABDALA et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. et al.,<br><br>Defendants. | Case No.: 22-cv-1290-RSH-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>[ECF No. 43] |

On October 11, 2024, Defendants filed a motion to dismiss the Third Amended Complaint in this case. ECF No. 43. For the reasons below, the Court grants in part and denies in part the motion.

**I.  BACKGROUND**

This putative class action was filed on August 30, 2022. ECF No. 1. Before any defendant appeared, on November 27, 2022, Plaintiffs filed their First Amended Complaint. ECF No. 3. On April 26, 2023, pursuant to a joint motion for leave to file, Plaintiffs filed their Second Amended Complaint (the "SAC"). ECF Nos. 19–21.

On June 28, 2023, Defendants filed a motion to compel arbitration for twenty-nine of the thirty-one plaintiffs named in the SAC. ECF No. 27. The Court granted Defendants' motion to compel arbitration on January 3, 2024, and stayed this action pending arbitration as to all named plaintiffs except for Cristina Abdala and Robynn Rowe (referred to herein as "Plaintiffs"). ECF No. 30.

On February 15, 2024, Defendants filed a motion to dismiss the claims of plaintiffs Abdala and Rowe. ECF No. 34. The Court granted in part and denied in part the motion, and granted leave to amend. ECF No. 39.

On September 6, 2024, Plaintiffs filed the Third Amended Complaint (the "TAC"), their operative pleading. ECF No. 40. The TAC alleges as follows. Defendants Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC (collectively, "Defendants" or "Cox") provide cable, telephone, and internet services in California, which customers pay for through a monthly fee associated with a service agreement. TAC ¶¶ 26–27, 29. Cox advertises and promises its cable, internet, and telephone services for one fixed monthly price over the term of the service agreement, but in fact, increases that price during the term of the agreement. *Id.* ¶ 1. The manner in which Cox effected these overcharges changed over time. For service agreements between 2014 and March 2021, Cox overcharged customers by keeping its base rate for service plans the same but raising the broadcast surcharge and regional sports surcharge ("Method One"); for service agreements starting in March 2021, Cox simply increased the base rate ("Method Two"). *Id.* ¶¶ 2 –15.

Plaintiffs Abdala and Rowe were each previously Cox customers for cable TV, internet, and phone service. *Id.* ¶¶ 95, 114. Both were allegedly overcharged by Cox increasing its surcharges during the terms of their respective agreements, that is, by "Method One."

The TAC pleads the following claims: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) violation of California's False

Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) breach of oral contract; and (5) breach of the implied covenant of good faith and fair dealing.

On October 11, 2024, Defendants filed their motion to dismiss the TAC. ECF No. 43. The motion is fully briefed. ECF Nos. 47 (response), 48 (reply).

## II.    LEGAL STANDARD

Defendants move to dismiss based on Federal Rule of Civil Procedure 12(b)(1) and (b)(6).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Defendants' jurisdictional challenge is a facial attack based on lack of standing.

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, a complaint "must contain sufficient allegations of underlying facts

to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When reviewing a motion to dismiss under Rule 12(b)(6), courts assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). But a court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Likewise, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). "After eliminating such unsupported legal conclusions, [courts] identify 'well-pleaded factual allegations,' which [are] assume[d] to be true, 'and then [courts] determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus VPC*, 623 F.3d at 1003. Dismissal under Rule 12(b)(6) is proper where there is no cognizable legal theory to support the claim or when there is an absence of sufficient factual allegations to support a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## III.    ANALYSIS

### A.    Article III Standing

Defendants first argue that Plaintiffs lack constitutional standing to bring claims related to Method Two:

> The TAC alleges two separate and distinct categories of purported misconduct and harm: Method 1 (Surcharge increases), which allegedly occurred between January 2015 and March 22, 2021 (TAC ¶¶ 2, 32); and Method 2 (base price increases), which allegedly commenced on March 23, 2021. *Id.* ¶¶ 2, 8. The only harm that Plaintiffs allege to have suffered personally emanates exclusively from Defendants' alleged use of Method 1. *See id.* ¶¶ 94-127. Plaintiffs do not allege that they were

subject to, much less harmed by Method 2.

ECF No. 43 at 8. Plaintiffs respond that Defendants are "cutting the salami too thin," and that both methods are part of the same scheme, with the same objective, resulting in the same harm. ECF No. 47 at 5.

Article III of the Constitution limits the exercise of federal judicial power to "Cases" and "Controversies." § 2, cl. 1. The "'irreducible constitutional minimum'" of Article III standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). In the context of class actions, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc).

Here, plaintiffs Abdala and Rowe have each alleged a basis for standing as to each of their five claims. Each alleges that she suffered an injury in fact (an unlawful overcharge), fairly traceable to the challenged conduct of Defendants in imposing those overcharges, and redressable through the award of damages and injunctive relief. The Court concludes that Abdala and Rowe have Article III standing to pursue their claims.

Defendants argue that, with regard to standing, Plaintiffs have pleaded too much (i.e., by including allegations about Method Two) rather than too little (by failing to plead a basis for any standing to sue). Defendants do not specify whether they are asking for dismissal of each and every claim, or instead are asking for a ruling that each claim is dismissed *in part* for lack of standing. Regardless, although Defendants cite general principles of standing, they cite no authority (binding or otherwise) in which a court dismissed a plaintiff's claims—either in whole or in part—in similar circumstances. The

Court, having concluded that Article III standing exists as to each claim, declines to dismiss those claims.

The Court notes that plaintiffs Abdala and Rowe will not be able to recover damages based on injuries they never suffered. However, Plaintiffs' allegations that Cox *continues* to overcharge its customers—even if Cox is no longer using the same precise means by which Abdala and Rowe were overcharged—are germane to Plaintiffs' request for injunctive relief. As Defendants argue, a plaintiff seeking an injunction must have an injury that is "actual or imminent, not conjectural or hypothetical." ECF No. 43 at 23 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)). The continuing nature of the alleged conduct bears on whether Plaintiffs have pleaded a basis for the injunction they seek.

Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore denied.[1]

### B.   Statute of Limitations

Defendants argue that some but not all of Plaintiffs' claims are barred by the applicable statute of limitations.

#### 1.   *Applicable Law*

A claim for breach of an oral contract, or for breach of a covenant implied in such a contract is subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 339. CLRA and FAL claims have a three-year statute of limitations. *See* Cal. Civ. Code § 1783 (providing a three-year statute of limitations for CLRA claims, running "from the date of

---

[1] The Court previously considered and rejected Defendants' argument that Cox's alleged change of method deprived Plaintiffs of standing to pursue injunctive relief. ECF No. 39 at 9 (declining to dismiss request for injunctive relief where Abdala "allege[d] that Cox misrepresented to her that she would be charged a fixed price, a misrepresentation that Cox continues to make"). The Court declines to alter its earlier ruling determining that Plaintiffs have standing to pursue injunctive relief.

the commission of [the unlawful] method, act, or practice"); Cal. Civ. Proc. Code § 338(a) (providing a default three-year statute of limitations for actions created by statute). UCL claims have a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208.[2]

Under California law, the statute of limitations "runs from the moment a claim accrues." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013). "[O]rdinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action." *Id.* (internal quotation marks and citation omitted). Among the equitable exceptions to this rule is the "discovery rule, [which] where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* (internal quotation marks and citation omitted). "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotation marks and citation omitted). "In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 808.

This lawsuit was filed on August 30, 2022. ECF No. 1. Abdala and Rowe were both added as plaintiffs in the First Amended Complaint, filed on November 27, 2022. ECF No. 3. In moving to dismiss, Defendants rely on August 30, 2022—rather than the later date Abdala and Rowe were added to the lawsuit—as the relevant date for purposes of the statute of limitations. ECF No. 43 at 16.

---

[2] The Parties are in agreement about the applicable statutes of limitations. ECF No. 43 at 16-18; ECF No. 47 at 20 n.3.

2.     *Relevant Allegations*[3]

The TAC alleges that Cox promised plaintiff Abdala a fixed monthly price in connection with her entering into: (a) an October 7, 2015 two-year minimum term agreement; (b) a March 27, 2018 two-year minimum term agreement; and (c) an April 6, 2020 two-year minimum term agreement. TAC ¶¶ 99, 101, 103. For each agreement, "Cox affirmatively told her that the service plan would be an advertised and fixed dollar amount that would not increase for the entire duration of the agreement." *Id.* ¶ 97. For each agreement, however, Cox allegedly increased the price during the term of the agreement. *Id.* ¶¶ 100, 102, 104. In connection with the third two-year agreement, Cox began overcharging Abdala in February 2021, and continued through the end of her TV service in September 2021. *Id.* ¶ 104.

The TAC alleges that Cox promised plaintiff Rowe a fixed monthly price in connection with her entering into an October 16, 2018 one-year minimum term agreement. *Id.* ¶ 118. "The agent promised and assured Ms. Rowe that the service plan would not increase during the term of the agreement." *Id.* However, Cox increased her monthly price beginning in February 2019, and continued overcharging her until the end of the service plan in February 2020. *Id.* ¶ 119.

The TAC alleges that Cox customers received printed monthly bills, although such bills "did not define or explain the Surcharges anywhere on the bill." *Id.* ¶ 89. "[M]ost Cox customers did not read the full printed monthly bills … because Cox encouraged its customers to sign up for electronic billing and automatic payment (which Cox calls 'EasyPay') instead of receiving paper statements. Through this billing process, customers received a monthly Cox billing email which stated the customer's bill total and informed

---

[3]     The TAC contains numerous allegations that relate to the putative class generally. The Court's analysis focuses on the non-conclusory allegations specific to plaintiffs Abdala and Rowe.

them that their bill would be automatically paid by the payment due date because they were signed up on EasyPay." *Id.* ¶ 91.

Since at least 2015, Abdala "was signed up for electronic billing and Cox's automatic payment program, EasyPay, as Cox encouraged her to do." *Id.* ¶ 108. As part of this program, she received monthly emails advising her of the total due and that her bill would be automatically paid. *Id.* The TAC is silent as to whether Rowe was signed up for EasyPay or instead received full printed monthly bills. The TAC does not allege that the amount of surcharge increases were inaccessible to either type of customer, but instead alleges that Abdala and Rowe "never noticed" the increases.[4] *Id.* ¶ 107, 122.

### 3.   *Accrual of Claims*

Plaintiffs' claims accrued no sooner than when Cox, in violation of its alleged promises that the monthly prices for its service plans would not increase, began increasing those prices.[5] However, once Cox increased those prices and billed Plaintiffs accordingly, Plaintiffs had reason to know that those prices had increased. This is the case whether Plaintiffs received full printed monthly bills, or instead received a monthly email reflecting the total price. Given the allegations as pleaded by Abdala and Rowe—that they were told that their service plans "would be a fixed dollar amount" and "would not increase during the term of the agreement," TAC ¶¶ 97, 99, 101, 103, 116, 118—an increase in the monthly amount that they were billed would cause them "at least to suspect a factual basis" that the price of the service plan, and not merely some government tax, had increased. *See Fox*, 35

---

[4]   Indeed, the TAC alleges in conclusory terms that "Cox's EasyPay program discourages customers from reviewing their monthly bill," *id.* ¶ 34, which seemingly indicates that even Cox customers using EasyPay *could* review their bill if they chose.

[5]   Defendants contend that Plaintiffs' consumer claims began to accrue at the time Cox represented that the price of its service plans would not increase. ECF No. 43 at 18. The Court disagrees. As alleged, the representations did not *become* false until Cox later increased the prices it charged.

Cal. 4th at 807.

### 4. *Contract Claims*

Abdala's claims for breach of oral contract and breach of implied covenant, subject to a two-year statute of limitations, are barred as to her October 2015 and March 2018 agreements, under which the breaches occurred well before August 30, 2020. As to her April 2020 agreement, under which Cox allegedly overcharged her from February 2021 to September 2021—all breaches within the statutory period—Abdala's contract claims are timely.

In contrast, Rowe's contract claims are time-barred in their entirety. Her service plan ended in February 2020, outside the statutory period. TAC ¶ 118.

### 5. *Consumer Claims*

Defendants challenge as time-barred Abdala's CLRA, FAL, and UCL claims in connection with her October 2015 and March 2018 agreements; they do not challenge those claims in connection with her April 2020 agreement. Defendants also challenge as time-barred Rowe's CLRA and FAL claims (but not her UCL claim) in connection with her October 2018 agreement.

Using a three-year statute of limitations for Abdala's CLRA and FAL claims (with August 30, 2019 as the applicable date), and a four-year statute of limitations for her UCL claims (with August 30, 2018 as the applicable date), all her consumer claims in connection with her October 2015 agreement are time-barred.

As to Abdala's March 2018 agreement, the TAC alleges that Cox told her on March 27, 2018 "that that the service plan price would not increase during the term of the agreement," TAC ¶ 101, but that Cox then increased that price between February 2019 and March 2020. TAC ¶ 102. Specifically, in February 2019, Cox increased Abdala's monthly Broadcast Surcharge by $2.50 per month, and her Regional Sports Surcharge "by at least one dollar," and "continued to unlawfully charge Ms. Abdala these additional amounts over and above her promised fixed-rate for the remainder of the term of her service plan (i.e.,

through March 2020)." *Id.* That is, Cox increased the surcharges once by a fixed amount, and continued that same overcharge in subsequent months.

Abdala asserts, and the Court agrees, that her UCL claim based on this agreement is timely. Although Cox made the representations at issue outside the four-year statutory period, Cox allegedly began to overcharge her contrary to those representations in February 2019, within the four-year statutory period. With regard to her CLRA and FAL claims, Abdala contends only that such claims would be timely *if* the discovery rule applied; and she does not specifically address the application of the discovery rule to her CLRA and FAL claims under the March 2018 agreement. The Court concludes that those claims are time-barred because beginning with the monthly billing cycle for February 2019—outside the three-year statutory period—Abdala had reason "at least to suspect" that the price of her service plan had increased. *See Fox*, 35 Cal. 4th at 807.

Defendants do not contest that Rowe's UCL claims under her October 2018 agreement are timely, but they argue that her CLRA and FAL claims under that agreement are time-barred. The TAC alleges that Cox, contrary to the promises it made to Rowe at the term she entered into that agreement, increased her monthly Broadcast surcharge by $2.50 in February 2019, and "continued to unlawfully charge Ms. Rowe this additional amount … for the remainder of the term of her service plan (i.e., through February 2020)." FAC ¶ 119. Thus, the alleged misrepresentation occurred and price increase began outside the three-year statutory period. Rowe only contends that her CLRA and FAL claims would be timely through application of the discovery rule; but, as with Abdala's March 2018 agreement, the discovery rule does not operate to save her consumer claims with a three-year statute of limitations.[6]

---

[6] Defendants have sought judicial notice of two documents, consisting of Cox bills to Abdala and Rowe. ECF No. 43-1. Plaintiffs object. ECF No. 48. The Court does not rely

11

### B.     Statute of Frauds

Defendants argue that Plaintiffs' contract claims—for breach of oral contract, and breach of the implied covenant of good faith and fair dealing contained in an oral contract—are barred by the statute of frauds. The Court has determined above that Plaintiffs' contract claims are time-barred, *except* for Abdala's claim for breach of her April 2020 agreement.

Under California law, "[a]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless the agreement "in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624. Defendants contend that the agreement at issue—which Abdala describes as a "2-Year Minimum Term Agreement"—falls within that statute.

In response, Plaintiffs argue, among other things, that full performance of an oral contract satisfies the statute of frauds; and that Plaintiffs alleged that they fully performed.[7] ECF No. 47 at 19. Plaintiffs cite *Zakk v. Diesel*, 33 Cal. App. 5th 431 (Ct. App. 2019), which stated that "[w]here the contract … has been fully performed by one party, the remaining promise is taken out of the statute of frauds, and the party who performed it may enforce it against the other." *Zakk*, 33 Cal. App. 5th at 450 (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005), Contracts, § 370, p. 414). The TAC alleges, albeit in general

---

on these documents in dismissing the claims at issue, and denies as moot the request for judicial notice.

[7]     Plaintiffs also argue that Defendants waived their statute of frauds argument by not raising it in their previous motion to dismiss the SAC. The Court disagrees. The Court previously construed the SAC as alleging an oral contract, and dismissed the oral contract claims for failure to state a claim, ECF No. 39 at 5-6, resulting in Plaintiffs repleading those oral contracts with greater specificity. Indeed, the TAC does not expressly identify the contracts at issue as oral contracts either, although Plaintiffs agree in their briefing that the contracts are oral. *See, e.g.*, ECF No. 47 at 2 ("Ms. Abdala's claim for breach of oral contract is not barred on its face by the statute of frauds.").

terms, that "Plaintiffs and the members of the Class have performed, for the relevant time frame, all of each's material obligations under the contract or have been excused from any non-performance." TAC ¶ 212.

Defendants do not respond to this argument in their reply brief. Instead, they state that "there are no factual disputes concerning … Abdala's full performance of the alleged oral agreements." ECF No. 49 at 6. The Court therefore declines to dismiss the contract claims based on the statute of frauds at the pleadings stage.

### C. Other Arguments

Defendants' motion raises additional arguments. First, Defendants argue that the TAC improperly engages in "group pleading" by treating the three related Cox corporate entities interchangeably. ECF No. 43 at 11–15. Second, Defendants argue that Abdala and Rowe lack statutory standing to pursue their consumer claims inasmuch as those claims are based on Method Two.[8] *Id.* at 8–10. Third, Defendants argue that Plaintiffs fail to state a claim for breach of implied covenant because Plaintiffs fail to allege that the oral agreements gave Defendants "discretion" to impose surcharges or base price increases. *Id.* at 23.

Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Here, Defendants could have made each of these arguments earlier in connection with their motion to dismiss the SAC, but did not do so. The SAC, like the TAC, sued all three related Cox entities. The

---

[8] The Court has determined above that Plaintiffs have Article III or constitutional standing. "Statutory standing, unlike constitutional standing, is not jurisdictional." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) (internal quotation marks and citation omitted). A lack of constitutional standing "requires dismissal for lack of subject matter jurisdiction," whereas a "lack of statutory standing requires dismissal for failure to state a claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

SAC, like the TAC, alleged that Defendants first overcharged customers by increasing monthly surcharges, and then—for customers who began service plans on or after March 23, 2021—by increasing the monthly base rates.[9] The implied covenant claims in the TAC are substantially similar to those in the SAC. Accordingly, the Court declines to address Defendants' new arguments at the pleading stage.

### D.   Leave to Amend

With regard to Plaintiffs' claims that are being dismissed based on the statute of limitations, the Court declines leave to amend. Plaintiffs are already on their fourth pleading. Plaintiffs filed their TAC with knowledge of the arguments that Defendants made regarding the statute of limitations in moving to dismiss the SAC. *See* ECF No. 39 at 6-7. Additionally, the Court concludes that further amendment would be futile; it is the facts that Plaintiffs have alleged, rather than the absence of detail, that establish that the claims dismissed herein are time-barred.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss [ECF No. 43], as follows.

As to plaintiff Abdala:

1. Claims One (CLRA) and Two (FAL) are dismissed to the extent they are based on alleged unlawful conduct in connection with Ms. Abdala's October 2015 or March 2018 agreements; those claims remain to the extent based on alleged unlawful conduct in connection with her April 2020 agreement.

2. Claim Three (UCL) is dismissed to the extent it is based on alleged unlawful conduct in connection with Ms. Abdala's October 2015 agreement; that claim remains to

---

[9]   The TAC introduced the specific nomenclature of "Method One" and "Method Two," but the distinction was clear from the SAC.

the extent based on alleged unlawful conduct in connection with the March 2018 and April 2020 agreement.

      3.    Claims Four (Oral Contract) and Five (Implied Covenant) are dismissed to the extent they are based on an alleged breach of Ms. Abdala's October 2015 or March 2018 agreements; those claims remain to the extent based on an alleged breach of her April 2020 agreement.

      As to plaintiff Rowe:

      1.    Claims One (CLRA), Two (FAL), Four (Oral Contract), and Five (Implied Covenant) are dismissed.

      2.    Claim Three (UCL) remains.

**IT IS SO ORDERED.**

Dated: March 27, 2025

_____
Hon. Robert S. Huie
United States District Judge